**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Marcus Dukes, | No. CV-23-01254-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Liberty Mutual Auto and Home Services LLC, et al., | |
| Defendants. | |

Pending before the Court is Defendant's Motion for Summary Judgment. (Doc. 29). The Court now rules on the motion.

**I.    BACKGROUND[1]**

Plaintiff has a LinkedIn profile that includes his educational and employment experiences dating back to the late 1990s. (Doc. 29-2 at 11, 21-23). Betty Cervera, a Talent Acquisition Partner ("Recruiter") at Liberty Mutual,[2] reviewed Plaintiff's LinkedIn profile and determined Plaintiff "could be a potentially viable candidate" for employment. (Doc. 29-1 at 4-5). On March 16, 2022, Ms. Cervera reached out to Plaintiff via LinkedIn and asked Plaintiff if he was interested in learning more about a Sales Representative position with Liberty Mutual. (Doc. 29-2 at 24). Plaintiff responded that he was interested in

---

[1] Because Plaintiff did not provide any evidence, or cite to the record, in his response, the Court cites primarily to Defendant's motion and exhibits.
[2] "Plaintiff improperly identifies the defendant as 'Liberty Mutual Auto and Home Services LLC, et al.' The prospective employer, and the correct defendant, is Comparion Insurance Agency, LLC, which is a wholly-owned indirect subsidiary of Liberty Mutual Group Inc." (Doc. 29 at 1). For ease, the Court will use "Defendant" where possible and "Liberty Mutual" elsewhere.

learning more and provided his telephone number. (Doc. 29-2 at 24).

On March 17, 2022, Plaintiff and Ms. Cervera had a phone call. (Doc. 29-1 at 5; Doc. 29-2 at 15). During this call, Ms. Cervera directed Plaintiff to create a candidate profile and submit an online application via Liberty Mutual's online talent acquisition platform called iCIMS. (Doc. 29-1 at 5; Doc. 29-2 at 14). The same day, Plaintiff emailed Ms. Cervera a resume. (Doc. 29-2 at 25-27). This resume did not include any dates. (Doc. 29-2 at 27). Plaintiff concedes that this resume included formatting errors and numerous typos and that it omitted some of his professional experience, including his then-current position. (Doc. 29-2 at 14). On March 18, 2022, Plaintiff created a candidate profile and uploaded a resume. (Doc. 29-3 at 7-8, 10). The resume that Plaintiff uploaded to iCIMS was the same resume he emailed to Ms. Cervera. (*Compare* Doc 29-2 at 14 *with* Doc. 29-3 at 10). The professional experiences on Plaintiff's resume did not match the professional experiences on Plaintiff's LinkedIn. (Doc. 29-1 at 5).

On March 22, 2022, Plaintiff and Ms. Cervera had another, longer telephone discussion. (Doc. 29-1 at 5; Doc. 29-2 at 15). Plaintiff claims Ms. Cervera promised him a callback from the hiring manager.[3] (Doc. 31 at 3). After the call, on the same day, Ms. Cervera emailed Plaintiff and asked him to "send [] a[n] updated resume" that "reflect[ed] the dates" and "job titles" of Plaintiff's employment. (Doc. 29-2 at 28). Although Ms. Cervera says she was "waiting for [Plaintiff] to upload a revised resume to iCIMS," there is no evidence of Ms. Cervera specifically asking Plaintiff to upload the resume to iCIMS (as opposed to "sending" it, as Ms. Cervera said in her email). (Doc. 29-1 at 6).

On March 23, 2022, Plaintiff emailed Ms. Cervera "a copy of [his] old resume" that "show[ed] dates worked." (Doc. 29-2 at 29). Plaintiff believes that this email was the last email correspondence he had with anyone at Liberty Mutual. (Doc. 29-2 at 19). Plaintiff

---

[3] Ms. Cervera testifies that she "advised" Plaintiff that she "would forward his contact information to the hiring manger" and explained that there was a possibility that the hiring manager would contact Plaintiff. (Doc. 29-1 at 6). It is Ms. Cervera's understanding that the hiring manager "attempted to contact [Plaintiff] and left him a voicemail, but [Plaintiff] failed to respond." (Doc. 29-1 at 6). Regardless, because this fact is not material to the Court's analysis, the Court has accepted Plaintiff's version of the facts for purposes of this Order.

did not upload this updated resume to iCIMS. (Doc. 29-1 at 6). Ms. Cervera has "no recollection" of receiving Plaintiff's email with his updated resume and did not forward either resume to the hiring manager. (Doc. 29-1 at 6). "Because [Plaintiff] did not upload a revised resume to iCIMS, [Ms. Cervera] believed that he had disengaged from the hiring process, and took no further action with respect to his application." (Doc. 29-1 at 6).

After not hearing back from Ms. Cervera, Plaintiff testifies that he called "the Peoria number for a local [Liberty Mutual] office" but he ended the call after he listened to a recorded message and was "transferred to corporate." (Doc. 29-2 at 6, 18-19). However, Plaintiff's phone records "do not validate his claim as they do not reflect any attempted calls to any phone number associated with Liberty Mutual." (Doc. 29 at 8 n. 3; *see generally* Doc. 29-4). Plaintiff does not address this in his response.

On March 27, 2022, Plaintiff filed an online complaint with the Arizona Attorney General's Office. (Doc. 29-2 at 20). "On February 16, 2023, [] Plaintiff received the Notice of Right to Sue from the Arizona Attorney General's Office." (Doc. 19 at 3). Plaintiff filed his second amended complaint ("SAC") on December 17, 2023, claiming that Defendant discriminated against him because of his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), U.S.C. § 621, *et seq.* (Doc. 19). Defendant filed the instant motion, (Doc. 29), to which Plaintiff responded,[4] (Doc. 30), and Defendant replied (Doc. 31).

## II. LEGAL STANDARDS

### a. Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations,

---

[4] Plaintiff's arguments in his response that Defendant altered his resume and did not participate in the EEOC investigation (which are not accompanied by evidentiary support) were not relevant to the Court's analysis; therefore, the Court need not address them.

stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* at 56(c)(1)(A-B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of demonstrating to the Court the basis for the motion and the elements of the cause of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* A material fact is any factual issue that may affect the outcome of the case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute about a fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 248. The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247-48. However, in the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party. *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004).

At the summary judgment stage, the Court's role is to determine whether there is a genuine issue available for trial. There is no issue for trial unless there is sufficient evidence in favor of the non-moving party for a jury to return a verdict for the non-moving party. *Liberty Lobby, Inc.*, 477 U.S. at 249-50. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* (citations omitted).

### b. Age Discrimination Under the ADEA

The ADEA makes it "unlawful for an employer to fail or refuse to hire . . . any individual [who is at least forty years of age] . . . because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a). In "disparate treatment" cases such as this,[5] where a plaintiff alleges they were treated differently based on age, "liability depends on whether the protected trait (under the ADEA, age) *actually* motivated the employer's decision. That is, the plaintiff's age must have actually played a role in the employer's decision-making process and had a determinative influence on the outcome." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) (quotation omitted). A plaintiff may establish "disparate treatment" based on: (1) "direct evidence" of age discrimination or (2) "circumstantial evidence" of age discrimination. *Sheppard v. David Evans & Assocs.*, 694 F.3d 1045, 1049 (9th Cir. 2012) (citing *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008); *Enlow v. Salem-Keizer Yellow Cab Co., Inc.*, 389 F.3d 802, 811 (9th Cir. 2004)).

"Direct evidence, in the context of an ADEA claim, is defined as 'evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the fact finder to infer that that attitude was more likely than not a motivating factor in the employer's decision.'" *Id.* (quoting *Walton v. McDonnell Douglas Corp.*, 167 F.3d 423, 426 (8th Cir. 1999)). Accordingly, if a plaintiff's ADEA discrimination claim relies on direct evidence, the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), does not apply. *Id.*; *see also Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 112 (1985) ("The *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination.").

In contrast, claims of age discrimination based on circumstantial evidence *are*

---

[5] "[A] claim for failure to hire [is] based on disparate treatment." *Ting v. Adams & Associates, Inc.*, No. 2:16-CV-01309-TLN-KJN, 2017 WL 4422508, at *5 (E.D. Cal. Oct. 5, 2017); *see also Carroll v. City of Tempe*, No. 2:10-CV-01425 JWS, 2010 WL 5343311, at *2 (D. Ariz. Dec. 22, 2010) (addressing a claim for "failure to promote" as a disparate treatment claim).

- 5 -

analyzed under the *McDonnell Douglas* three stage burden-shifting framework. *Sheppard*, 694 F.3d at 1049 (citing *Diaz*, 521 F.3d at 1207). Under the burden-shifting framework, a plaintiff must first establish a *prima facie* case of discrimination. *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 916 (9th Cir. 1997). "Establishment of the *prima facie* case in effect creates a presumption that the employer unlawfully discriminated against the employee." *Texas Dep't. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "A plaintiff makes out a *prima facie* case of intentional discrimination under the ADEA if he demonstrates that he was within the protected class of individuals between forty and seventy years of age, that he applied for a position for which he was qualified, and that a younger person with similar qualifications received the position." *Cotton v. City of Alameda*, 812 F.2d 1245, 1248 (9th Cir. 1987).

If a plaintiff makes a *prima facie* case, the burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the disparate treatment. *Odima v. Westin Tucson Hotel Co.*, 991 F.2d 595, 599 (9th Cir. 1993) (citing *Burdine*, 450 U.S. at 252-53). If the defendant provides such a reason, the plaintiff then must establish that the reason is a pretext for discrimination. *See id.* A plaintiff does not have to prove pretext at the summary judgment stage, but does have to introduce evidence sufficient to raise a genuine issue of material fact regarding whether Defendant's articulated reason is pretextual. *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000). Despite the intermediate burden of production shifting, the ultimate burden of proving discrimination remains with a plaintiff at all times. *See id.* at 1281; *Burdine*, 450 U.S. at 253.

**III.    DISCUSSION**

Here, Plaintiff asserts a claim for "failure to hire based upon age" under the ADEA. (*See generally* Doc. 19). More specifically, Plaintiff asserts a claim for "disparate treatment," arguing that Defendant treated him different because of his age when Defendant did not hire him. Plaintiff has not provided direct evidence that suggests that Plaintiff's age was a motivating factor in Liberty Mutual's decision to not hire Plaintiff. (*See* Doc. 29-2 at 4-5, 17-18 (Plaintiff's deposition in which Plaintiff repeatedly says

Liberty Mutual made no direct written or oral comments about his age or age generally)). Rather, Plaintiff relies on circumstantial evidence. Thus, the *McDonnell Douglas* three stage burden-shifting framework applies.

### a. The *Prima Facie* Case

As stated above, to make out an ADEA claim based on circumstantial evidence of disparate treatment, Plaintiff must first establish a *prima facie* case by demonstrating he was (1) between forty and seventy years of age, (2) "that he applied for a position for which he was qualified," and (3) "that a younger person with similar qualifications received the position." *Cotton*, 812 F.2d at 1248.

Here, it is undisputed that Plaintiff was between forty and seventy years of age at all relevant times. (Doc. 29-2 at 3). Defendant also concedes, for purposes of its motion, that Plaintiff "was minimally qualified for the open role for which he was not hired." (Doc. 29 at 13). However, Defendant argues that Plaintiff cannot establish the third element— "that a younger person with similar qualifications received the position." (Doc. 29 at 13).

Plaintiff argues that "Defendant hired multiple younger individuals for the same position" and "continued to seek candidates, many of whom are substantially younger than Plaintiff." (Doc. 31 at 4-5). Plaintiff does not cite to the record for this argument. However, in "continu[ing] to construe *pro se* filings liberally," *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), the Court sees that Plaintiff, in his SAC, names Amayrane (Stephanie) Iturbe and Adam Bronston as two examples of "younger individuals" hired "for the same position." (Doc. 19 at 3). Plaintiff cites to the individuals' LinkedIn profiles as evidence that they were hired by Liberty Mutual and that they are under the age of 40. (Doc. 19 at 3; Doc. 29-2 at 7-8).

Although Defendant did hire Amayrane Iturbe (in February 2023) and Adam Bronston (in June 2022), Ms. Cervera "was not the recruiter responsible for sourcing or working to place" either candidate. (Doc. 29-1 at 6; Doc. 29-3 at 3). In other words, neither Ms. Iturbe nor Mr. Bronston were hired into the position that Plaintiff was competing for. Rather, Ms. Cervera was recruiting candidates for roles underneath a hiring manager

named Lorin Bronston. (Doc. 29-1 at 6; Doc. 29-3 at 4). With Ms. Cervera's help, "Lorin Bronston hired three candidates from March 2022 through July 2022."[6] (Doc. 29-3 at 3-4). These three candidates were ages 34, 30, and 46.[7] (Doc. 29-3 at 4). At the time Plaintiff applied for the position, Plaintiff was 47 years of age. (Doc. 29-2 at 3). Because at least one of these candidates was not "substantially younger," the inference of age discrimination is slight. *See Douglas v. Anderson*, 656 F.2d 528, 533 (9th Cir. 1981). Plaintiff provides no additional evidence to bolster an inference of age discrimination. As such, Plaintiff has not established a *prima facie* case of age discrimination.

### b. Legitimacy of Defendant's Explanation for Failure to Hire Plaintiff

Assuming that Plaintiff could make a *prima facie* case, the burden would shift to Defendant to produce evidence that Plaintiff was not hired for a legitimate, nondiscriminatory reason. *See Douglas*, 656 F.2d at 533. This requires Defendant only "to set forth a legally sufficient explanation" for why it did not hire Plaintiff. *Lowe v. City of Monrovia*, 775 F.2d 998, 1007 (9th Cir. 1985).

Defendant explains that it did not hire Plaintiff because it "believed that Plaintiff dropped out of the hiring process for a position with a high volume of candidates." (Doc. 29 at 13-14). It appears that Defendant's belief that Plaintiff was no longer pursuing the position was based on a miscommunication between Ms. Cervera and Plaintiff. Ms. Cervera believed Plaintiff had disengaged from the hiring process after Plaintiff did not upload an updated resume to iCIMS. (Doc. 29-1 at 6). Instead, Plaintiff had emailed an updated resume to Ms. Cervera,[8] which Ms. Cervera "inadvertently overlooked." (Doc. 32 at 3). Ms. Cervera testifies that she has "no recollection" of receiving an email from Plaintiff with an updated resume and that she "did not forward *any* resume from [Plaintiff] to the hiring manager."[9] (Doc. 29-2 at 6). It seems that Plaintiff did not follow up with Ms.

---

[6] Plaintiff submitted his application in March 2022. (Doc. 29-21 at 8).
[7] Defendant also notes that between 2021 and 2023, Lorin Bronston hired 23 candidates and eight of those candidates were over the age of 40. (Doc. 29-3 at 4).
[8] Ms. Cervera says she told Plaintiff "to upload a revised resume to correct the deficiencies" during their phone conversation and by email, however, Ms. Cervera's email instructed Plaintiff to "send" her the resume. (Doc. 29-1 at 6; Doc. 29-2 at 28).
[9] Thus, the hiring manager never made a discrete decision not to hire Plaintiff because he never received Plaintiff's resume.

1 Cervera after sending his resume. (Doc. 29 at 8 n. 3; *see generally* Doc. 29-4). The Court finds that Defendant has met its burden to articulate a legitimate, non-discriminatory reason for its failure to hire Plaintiff.[10]

### c. Pretext

Once the employer articulates a legitimate, nondiscriminatory reason for the challenged action, the burden then shifts back to the plaintiff to raise a genuine factual question as to whether the proffered reason is pretextual. *Lowe*, 775 F.2d at 1008. The plaintiff can prove pretext "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang v. Univ. of California Davis, Bd. of Trustees*, 225 F.3d 1115, 1124 (9th Cir. 2000). "All of the evidence—whether direct or indirect—is to be considered cumulatively." *Shelley v. Geren*, 666 F.3d 599, 609 (9th Cir. 2012) (citing *Chuang*, 225 F.3d at 1124). Although the plaintiff may use circumstantial evidence to show pretext, the evidence must be "specific" and "substantial." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890 (9th Cir. 1994).

Plaintiff has not introduced any evidence that raises a question as to whether Defendant's proffered reason is pretextual. In fact, Plaintiff does not cite to the record at all. Furthermore, while Plaintiff does generally allege a "consistent pattern of hiring younger, less-experienced individuals," (Doc. 31 at 5), Defendant has offered evidence that shows the contrary: between 2021 and 2023, hiring manager Lorin Bronston hired 23 candidates and eight of those candidates were over the age of 40. (Doc. 29-3 at 4).

### IV. CONCLUSION

In conclusion, Plaintiff has not established that there is a disputed issue of fact for

---

[10] The Court can conceive of multiple other legitimate, nondiscriminatory reasons that Defendant did not hire Plaintiff. For one, it appears that "Liberty Mutual did not make a discrete decision to reject Plaintiff" because the hiring manager never received Plaintiff's resume. (Doc. 32 at 6). And even if Defendant made a discrete decision to reject Plaintiff, that decision would have been based on Plaintiff's resume that included numerous errors, which itself is a legitimate, nondiscriminatory reason. Finally, underlying all of this is the fact that Ms. Cervera saw Plaintiff's LinkedIn profile that included dates that would suggest Plaintiff's age, and Ms. Cervera still pursued Plaintiff as a candidate for the role.

trial that his age *actually* motivated Defendant's decision to not hire him. Because the evidence before the Court does not create a dispute of material fact, summary judgment is warranted.

For the reasons set forth above,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 29) is **GRANTED** and the Clerk of the Court shall enter judgment in favor of Defendant and against Plaintiff accordingly.

Dated this 18th day of February, 2025.

_____
James A. Teilborg
Senior United States District Judge